### GREENVILLE v. ORMAND.

1. EVIDENCE—NEGOTIABLE NOTES.—Conversations between the indorsers of a negotiable note and the payee, in presence of the payer, as to its negotiation, are competent in an action on the note by the holders against the principal and sureties.

2. IBID.—BOOKS OF ACCOUNT.—When books of account are in existence, a witness can only speak of the account from memory, when he can state all the items without deriving such knowledge from the books.

3. EVIDENCE—NEGOTIABLE NOTES.—Conversations between the makers of a negotiable note, at time of execution, are not competent in an action by a legal holder for value, unless it be shown that such conversations were communicated to the holder before purchase.

4. IBID.—PRACTICE—APPEAL.—It is harmless error to rule out testimony offered by a defendant, when same fact has been proved by plaintiffs' witness.

5. NEGOTIABLE NOTE—INDORSERS.—An accommodation indorser may withdraw his name from a negotiable note at any time before its negotiation. *Dictum.*

6. APPEAL—JUDGMENT—SUPREME COURT.—This Court will not consider a question as to the amount of a judgment exceeding the amount of the verdict, raised for the first time here.

7. NEGOTIABLE NOTE—PRACTICE—REMEDY.—The holder of a negotiable note, with notice that it was executed by sureties for purpose of being discounted by the payee, and with notice that the payee indorsed it without consideration, has no title which he can enforce against the sureties, although he paid the principal full value for it. JUSTICE POPE *dissenting*.

Before WATTS, J., York, November, 1896.    Reversed.

Action by City Council of Greenville against G. C. Ormand, surviving partner of Ormand & Goforth, Thos. F. Dunlap, administrator of R. J. Dunlap, L. R. Williams, and L. K. Armstrong, on two negotiable notes. The following is the charge of the Circuit Judge:

This is an action brought by this plaintiff against these defendants upon two notes, to recover on two notes for $2,000 each, I believe—anyhow, they are set out in the complaint—and interest. The plaintiff alleges that these notes were signed by the defendants, and that for value they came into their hands; that they paid the money for them, and no part thereof has been paid, and that they are now entitled to recover. The defendants admit the execution of the notes; all say that they signed it, but deny that these plaintiffs can recover, and set up certain defenses. They are largely, almost purely, of a legal nature. All of the defendants, except Ormand, the surviving partner, allege that they were sureties on the notes—that is, that they signed the notes as sureties for Ormand & Goforth, and by reason of certain conditions which they had at the time with Ormand & Goforth, and which conditions were known to the city of Greenville, the plaintiff here, when they traded for the notes, that they are not bound to pay the city of Greenville. Well, now, on the trial of the case, the plaintiff has introduced certain testimony here, and the defendants have also attempted to introduce certain testimony. The bulk of that testimony, under the authority I have as

Judge here, I have ruled out; so, under the testimony before you, you are to find your verdict; and if you believe the testimony of the plaintiff, that these notes were executed by Ormand & Goforth as principals, and that these other defendants signed as surety, that the note was a negotiable note—that is, a note not sealed—made payable to W. E. Beattie as cashier, and Beattie indorsed that note, and the city of Greenville advanced the money for the value of the note, then I charge you, as matter of law, that the city of Greenville is' entitled to recover the full amount they have asked for here.   Now, you have heard the testimony.   It is for you to say whether you believe they signed as sureties; that Ormand & Goforth signed the note as principals, and these other gentlemen signed as sureties (they admit that, there is no dispute about that); then I charge you, as matter of law, if Ormand & Goforth, or either of them, carried that note to the city of Greenville, and there Mr. W. E. Beattie indorsed the note on the back (and there is no dispute over that), and the city of Greenville advanced the money for them, then I charge you, as matter of law, the city of Greenville is entitled to the amount sued for here, and interest on it.

The defendants have asked me to charge you:

1st. As between the payer and payee of notes like the ones in suit, it is competent to inquire into the question of consideration, and if none was given, the note would not be collectible by the payee.   I refuse to charge you that.   I charge you that if this was a negotiable instrument, and I charge that it is, and it was carried to the city of Greenville and Beattie indorsed on the back of it, as they admit he did, and the city of Greenville took up that note by paying money, they are entitled to recover.

2d. The same is true as between the payer and any party to whom the payee may have transferred the notes, if such party knew that the payee had given no consideration for it.   I refuse to charge you that.   If the city of Greenville is a purchaser for value, they are entitled to recover.

3d. If the payee of such notes, without having given any consideration to the payer, transfers it to a third party, who is acquainted with that fact, he would have no title unless he could show that the payer, with the knowledge of such transfer, had himself taken the consideration from such third party. I refuse to charge you that. If you believe that these parties signed that note, these sureties, and put it in the hands of Ormand & Goforth, the principals of it, and they carried it to the city of Greenville and got Beattie to indorse, and the corporation of the city of Greenville paid for it, they are entitled to recover.

4th. If, as a matter of fact, the payer, who, with the knowledge of such transfer, had taken the consideration from such third party, was principal, and the other payers were sureties, and such third party knew these relations to exist, the note would not be binding against the sureties unless the principal was authorized by them so to act; and it would devolve upon such third party to show such authority from the sureties. I refuse to charge you that.

Maj. Hart: We ask your Honor to charge upon this point: That the city of Greenville knew that Mr. Beattie had paid nothing for the notes, as Mr. Bostick testifies. Mr. Bostick, the city treasurer, says he knew that Beattie had paid nothing for them.

The Court: I charge you, before the defendants can prevent a recovery, it would be incumbent upon them to show by testimony that the city of Greenville knew of the conditions that the sureties had made with the principal, if there were any conditions at all. The burden is not on the city of Greenville to show what these conditions were at all. But if these sureties made a condition with the principals, Ormand & Goforth, in order to prevent the city of Greenville from recovering, it is incumbent upon the defendants to show that the city of Greenville actually had knowledge of what those conditions were. You can take the record, and find a verdict. The form of your verdict will be: "We find for the plaintiff so many dollars"—writ-

ing it out and signing your name as foreman; or, if you find for the defendants: "We find for the defendants."

Maj. Hart: May it please your Honor, the testimony of Mr. Bostick, the fiscal agent, shows that he knew that the bank hadn't paid any money, and that he knew that Dunlap, Williams, and Armstrong were sureties on the note when he received it. Now, we want an instruction that if the jury believe the testimony of Mr. Bostick, the city council of Greenville had notice.

The Court: Gentlemen, you know what the rules of Court require, that these propositions of law have to be handed up before argument. It is a safe rule; the Judge gets his mind set upon the propositions of law sent up, and when he is asked to charge propositions on the spur of the moment, he has no time to digest them at all. I charge you, if you believe Bostick was the treasurer and fiscal agent of the city of Greenville, any notice to Bostick would be notice to the city of Greenville.

The jury found a verdict for the plaintiff for $4,904.44, and judgment was entered thereon for $4,940.44.

From this judgment, all defendants, except first named, appeal on following exceptions:

1. Allowing witness, Bostick, to testify to the acts and statements of the principal and the plaintiff's treasurer and the bank's cashier on the occasion of the bank's transfer of the notes in suit, the sureties not being present, and ruling that the sureties would be bound by whatever the principal debtor did in reference to the transfer.

2. Not allowing witness, Ormand, to testify from memory the state or result of the contractors' account with the plaintiff at the time of the transfer (that the contractors owed the city $1,500), because of the absence of the contractors' account, in which, witness admitted on the stand, the various items of the account had been entered.

3. Not allowing witness, Ormand, or witness, Armstrong, or witness, Williams, to testify to conversations between

principals and sureties as to the purpose for which the notes were to be made, and the conditions upon which the sureties signed them; and ruling (as applicable to the point in issue) that when the sureties signed the notes and turned them over to the principal, "that put it in his power to put it in the hands of an innocent purchaser, and it doesn't make any difference what the agreement was between the maker and the surety; unless the purchaser had notice of it, he is not bound by it." "My idea about it is, it doesn't make any difference whether Beattie took up this note or the city of Greenville, that these sureties are liable." And in this connection excluding the deposition of witness, Armstrong.

4. Excluding the depositions of W. E. Beattie and Hamlin Beattie, respectively, offered to prove that the bank, payee, never discounted the notes, and so never had any transferable title.

5. Not allowing witness, Williams, surety, to testify that he had never authorized any one to make any other disposition of the notes, except that stated at the signing.

1. Refusing to charge: "1st. As between the payer and payee of a note, like the ones in suit, it is competent to inquire into the question of consideration, and if none was given, the note would not be collectible by the payee." And charging instead: "That if this was a negotiable instrument, and I charge that it is, and it was carried to the city of Greenville, and Beattie indorsed on the back of it, as they admit he did, and the city of Greenville took up that note by paying money, they are entitled to recover."

2. Refusing to charge: "2d. The same is true as between the payer and any party to whom the payee may have transferred the note, if such party knew that the payee had given no consideration for it." And charging instead: "If the city of Greenville is a purchaser for value, they are entitled to recover."

3. Refusing to charge: "3d. If the payee of such a note, without having given any consideration to the payer, transfers it to a third party, who is acquainted with that fact, he

would have no title, unless he could show that the payer, with the knowledge of such transfer, had himself taken the consideration from such third party." And charging instead: "If you believe that these parties signed that note, these sureties, and put it in the hands of Ormand & Goforth, the principals of it, and they carried it to the city of Greenville and got Beattie to indorse, and the corporation of the city of Greenville paid for it, they are entitled to recover."

4. Refusing to charge: "4th. If, as matter of fact, the payer, who with knowledge of such transfer had himself taken the consideration from such third party, was principal, and the other payers were sureties, and such third party knew these relations to exist, the note would not be binding against the sureties unless the principal was authorized by them so to act, and it would devolve upon such third party to show such authority from the sureties." And charging instead: "Before the defendants can prevent a recovery, it would be incumbent upon them to show by testimony that the city of Greenville knew of the condition that the sureties had made with the principal, if there were any conditions at all."

Because the judgment entered on the verdict was excessive, being for $36 more than the jury found.

*Messrs. Hart & Hart, Finley & Brice,* and *C. E. Spencer,* for appellants. The first cite: *Plaintiff has no title:* 9 How., 197; 4 Gray, 95. *And if it had title it was cosurety:* 5 Rich., 310. *And could not erase its indorsement:* 46 Ia., 515; 21 Ohio, 163; 9 B. Monroe, 5; 37 Mich., 468. The latter cite: *Proof that appellants bound by transfer necessary:* 155 Pa., 489; 42 S. C., 420; 32 S. C., 229.

*Messrs. Jos. A. McCullough* and *Wilson & Wilson,* contra. The former cites: *Conversations between payee, indorser, and payer competent:* 32 S. C., 236; 43 S. C., 489. *Purchase by plaintiff immaterial diversion:* 73 N. Y., 269; 73 Am. Dec., 347; 5 Wend., 66; 8 Id., 437; 18 N. Y., 327; 10 Johns., 321; 51 N. Y., 602; 17 Johns., 176. *Note indorsed in blank is as*

*if drawn payable to bearer:* 6 C. C. A., 447; 1 McM., 9; 10 Rich. Eq., 139. *All makers are principals:* 2 McM., 357; 10 Rich., 17; 1 Strob., 444; 41 S. C., 81.

Oct. 27, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE. The above entitled action came on for trial before his Honor, Judge Watts, and a jury, at the November, 1896, term of the Court of Common Pleas for York County, in this State. After a verdict in favor of the plaintiff and the entry of a judgment thereon, all the defendants, except G. C. Ormand, as survivor of Ormand & Goforth, appealed therefrom. In order that the grounds of appeal may be understood, it seems to me that some reference to the pleadings, the testimony, and the charge of the Circuit Judge will become necessary. The complaint of plaintiff alleged that the defendants were indebted to it by reason of two promissory notes, executed in 1892, in the aggregate sum of $4,000, and interest thereon, at the rate of eight per cent. per annum, from the 10th day of May, 1892, until paid, and costs. The answer admitted the execution of the two notes in question, but denied any liability to pay said notes. *First,* because they deny that plaintiff is the lawful owner and holder of said two several notes, or either of them, by indorsement, transfer or otherwise. They allege that neither W. E. Beattie, cashier, nor the National Bank of Greenville, acquired any title to the said notes, or either of them, and that plaintiff had notice of want of title at the time of said alleged transfers, if any were made, and that plaintiff paid no consideration therefor. *Second,* because they allege that W. L. Goforth and G. C. Ormand were the principal makers and payers of said two notes, respectively, and that R. J. Dunlap and the defendants, L. K. Armstrong and L. R. Williams, were, and are, sureties thereto; and that plaintiff and W. E. Beattie, cashier, knew the relations of the several parties signing the two said notes. *Third,* because they allege that the said R. J. Dunlap, now deceased, and the defendants, L. R.

5—51

Williams and L. K. Armstrong, as sureties, signed the two several notes, payable to W. E. Beattie, cashier, for the purpose of enabling the principal makers, Ormand & Goforth, to borrow money from W. E. Beattie, cashier of the National Bank of Greenville, for the purpose of completing in a speedy and economical manner the sewerage work undertaken for said plaintiff, then well advanced, and for the completion of which the said sureties had undertaken by their bond. And it was not the purpose of said sureties, or either of them, in making said notes, to permit the same to be negotiated to any other person or corporation, or for any other purpose than as herein set forth. And these defendants allege that the plaintiff, without authority from these defendants, took possession of said two notes without advancing to the principal makers the cash for the same, and gave said Ormand & Goforth credit on account for the value of said notes; and these defendants are informed and believe that the said two notes were misapplied by plaintiff to a previously existing indebtedness by Ormand & Goforth to said city council (the plaintiff), for which these defendants were in no wise liable, and of which they were then ignorant, and to other purposes not contemplated by said contract of suretyship. *Fourth*, because the defendants deny that they, or either of them, are indebted to plaintiff in any sum whatever upon said notes, or either of them, and because the plaintiff is, largely in excess of the said two notes and interest on the same, indebted to the said Ormand & Goforth by reason of work and labor done under their contract with the plaintiff in the construction of the sewerage system. I do not quote more from the answer on this fourth defense, so far as the indebtedness of the plaintiff to Ormand & Goforth for work done in the construction of the sewerage system is concerned, for the reason that this element seems to have been, in some way, eliminated from the action at the trial thereof.

The testimony is not voluminous. The following is a copy of one of the notes in question—the two were practi-

cally identical: "$2,000. Greenville, S. C., May 7, 1892.—
On demand after date, we, or either of us, promise to pay to
W. E. Beattie, cashier, or order, negotiable and payable at
the National Bank of Greenville, S. C., without offset, the
sum of $2,000, for value received. Interest after maturity
at the rate of eight per cent. per annum until paid. (Signed)
Ormand & Goforth; R. J. Dunlap, L. R. Williams, L. K.
Armstrong. Indorsements: Without recourse on this bank.
Hamlin Beattie: president. Without recourse. W. E. Beat-
tie, cashier." F. J. Bostick, a witness for the plaintiff, tes-
tified in substance as follows: As clerk and treasurer of the
city of Greenville, I was present in my office during the
morning of the 11th May, 1892. There were present seve-
ral members of the city council, also the sewerage contract-
ors, Ormand & Goforth. I am not positive both of said
contractors were present—I am certain one of them was
present—I think Mr. Ormand was. The two notes now in
question were in the hands of members of the city council
when I entered my office. The mayor and myself were in-
structed to indorse these notes. We did so, and I was then
instructed to carry the two notes over to the Greenville
National Bank, and tender them to the bank officials. Mr.
Ormand went with me. When we tendered the notes at the
bank, Mr. Beattie, as its president, said: "The city council
is now in funds, and let the city lend the money on these
notes to Messrs. Ormand & Goforth." Mr. Beattie then
said that there was no need for the mayor and clerk and
treasurer to indorse these notes. And he then, and also the
cashier, wrote the words on each note which appear on the
same above their official signatures. "I then took the notes
back to my office, and the mayor then erased his name and
I erased mine. The city council then ordered me to pay
Ormand & Goforth $2,500 at that time and $1,500 after-
wards. In all I paid Ormand & Goforth $4,000. This
money has never been paid back to the city council of
Greenville. Mr. Ormand was present all the time." On
his cross-examination he explained that the money was

paid by his checks on the Greenville National Bank. The check was produced and identified by the witness as having been obtained from the Greenville National Bank. This witness also testified that when the bank officers put their indorsement on the two notes, nothing was paid to them, and that the witness knew that the bank had not advanced any money on these two notes. He also testified that he knew that Mr. Williams, Mr. Dunlap, and Mr. Armstrong were sureties on the two notes. G. C. Ormand was sworn as a witness for the defense. He testified that he was a member and survivor of the firm of Ormand & Goforth; that said firm had contracted to construct and did construct the sewerage system for the city of Greenville; that said firm began work about 28th March, 1892; that his partner, Goforth, died 31st July, 1892. He also testified that he arranged with Dunlap, Armstrang, and Williams to sign the two notes. It was offered to read depositions made by Hamlin and W. E. Beattie, and also that of Lawson E. Armstrong. The Court declined to allow the same read on the ground of irrelevancy. Such testimony appears copied in the "Case."

As the requests to charge appear in the grounds of appeal, it will be well to report the charge of the presiding Judge and the grounds of appeal. We will now consider the grounds of appeal. The first imputes error to the Circuit Judge in allowing the witness, F. J. Bostick, to testify as to what occurred when the witness and G. C. Ormand went with the notes to the National Bank of Greenville, to attempt their negotiation with said bank, when its cashier, W. E. Beattie, was named as the payee therein, and when the defendant sureties were not present. It is certainly true that all the makers of these two notes placed the notes in the hands of G. C. Ormand as their agent, to negotiate the same with the National Bank of Greenville. The defendants so admit in their answer, and such facts, except as to Ormand's agency, appear in the notes themselves. Why was it not competent for this witness, who was present as an interested person, to

detail what occurred then in connection with the attempt at the negotiation of these notes?  In fact, the admissions of this witness as to what occurred then is made the basis of the principal defense by the defendants.  The testimony was relevant to the issues raised by the pleadings themselves; but apart from the pleadings, where notes, such as the present, are in issue, any testimony in the line marked out by the terms of the notes is competent.

As to the second exception, relating to the competency of certain testimony offered by the witness, Ormand, the Judge was clearly right here.  Ormand testified that books were kept by his firm, which showed the condition of the account of said firm with the city council of Greenville at all times, and that his knowledge was derived from such books, but that he was unable to state from his memory the condition of and detail of such account; also, it did not appear that such books were not in existence. Such books were the best and proper evidence as to these matters.  It was not error to deny this witness any right to speak of this account from memory.

As to the third exception.  The witnesses, Ormand, Armstrong, and Williams, could not testify as to conversations of the makers of these notes at the time they were signed, unless it was first proved that the plaintiff, or some one or more of its agents, were told of these conversations between the makers.  There was no effort to prove any such knowledge on the part of the city council or its agents.

The fourth exception relates to the depositions of Hamlin Beattie and W. E. Beattie, relating to no consideration passing, when they, as officers of the bank, wrote their indorsements without recourse upon the two notes.  The defendants had the right to this testimony, but it was immaterial error, because the plaintiff, through its witness, F. J. Bostick, fully admitted that nothing was paid to the bank at the time these indorsements were made by its officers.

Fifth exception relates to the admission of the deposition of Williams, one of the sureties to the two notes. The Circuit Judge committed no error in refusing to allow this deposition to be read in testimony; it related to the conversation alleged to have occurred between the makers when they signed the two notes, and no notice of such conversation was brought home to the city council, or its agents.

We come now to the alleged errors of the Circuit Judge in his charge, and refusals to charge. It is settled law that the charge of the Judge must be restricted to the issues raised by the pleadings and the testimony in the cause. That portion of the Constitution of the State which requires that "Judges shall declare the law," means that Circuit Judges shall declare the law involved, or necessary, in causes then on trial, and not that Judges shall declare the whole of the law, embracing all cases, civil and criminal. What were the issues tendered by the pleadings and raised at the trial? First. That the plaintiff could not hold the defendants to any liability on the two notes sued on, because the notes were on their face made negotiable by the National Bank of Greenville, but were not so negotiated. Second. Because the indorsement by the president and cashier of the Greenville National Bank, being without value, was a nullity, and did not, and could not, carry title to the notes to the city council of Greenville. Third. Because, even if such indorsement of said bank was valid, the city council were not holders for value, by reason of the fact that there was no value paid by the plaintiff for such notes. Fourth. Because the city council could not be holders for value as against the sureties by reason of the fact they took said notes with full notice of the conditions expressed on the face of said notes. Fifth. Because the city council of Greenville could not be the legal holders of said notes, because of a condition made by the makers of the notes at the time they signed the same, although not expressed on the face of the notes. Sixth. Because the city

council had notice of the fact that the defendants, except Goforth, were sureties only, and, therefore, it was incompetent for Ormand & Goforth to vary the terms of said notes without the approval of said sureties, and having done so, the city council of Greenville, as against said sureties, had no right to the position of holders of these notes.

I confess, at the outset, that this action, or rather the appeal therefrom, has occasioned me profound concern, for, on the one hand, the rights of holders of negotiable notes for full value are concerned, and, on the other hand, the rights of indorsers, who claim that their contract should be restricted by the terms actually employed by them in the notes, which represent their contract, are involved; and if I fail to mete out the law merchant in this cause, it is not by reason of the want of careful, protracted and patient reflection on my part. The cases of *Fowler* v. *Allen*, 32 S. C., 229, and *Sullivan* v. *Williams*, 43 S. C., 489, establish the doctrine in this State, that when the makers, including sureties, entrust a negotiable note to one of the makers to carry out the terms of the contract, he is made the agent of such makers. Now, I wish to be understood correctly just here. I do not mean that any general agency is thus created—that such an agent can do anything and everything; but such agent can do everything within the contemplation of the contract as expressed therein. Now, it is admitted on all hands that the firm of Ormand & Goforth were entrusted with these notes after the parties had signed the same. What was the admitted purpose of these notes? The defendants in their answer say it was "for the purpose of enabling the principal makers, Ormand & Goforth, to borrow money from W. E. Beattie, cashier of the National Bank of Greenville, for the purpose of completing, in a speedy and economical manner, the sewerage work undertaken for said plaintiff, then well advanced, and *for the completion of which the said sureties had undertaken by their bond*" (italics mine.) The contract for the sewerage work was begun about April, 1892, and completed in September,

1892. It is not claimed that there was any diversion of any of these funds arising from the negotiation of these two notes. It is true, in this connection, that the defendant sureties, in their answer, did claim that the notes did not yield to Ormand & Goforth any money, but that the same was given as a credit on Ormand & Goforth's account with the city council of Greenville on the sewerage contract; but the testimony was absolutely convincing in the cause that $4,000 was paid in cash by the city council of Greenville to Ormand & Goforth on these two notes. So, in the charge of the Judge, there was no request from defendants in reference to the fact that money was not paid by the city council of Greenville to Ormand & Goforth on these two notes. Thus they left it as a fact to be determined by the jury, whether the city council paid value for the notes, and by the verdict of the jury it was established that the city council did pay value for the notes. And it will appear, by reference to the requests to charge, that the defendant sureties made their battle on the ground that they alone contracted in their notes for the same to be negotiated at the Greenville National Bank, and by no other person or corporation. We have already seen that there was no material diversion of the funds, which it was agreed between the makers should be realized by the negotiation of their notes, and that the $4,000 named in the two notes was actually paid to Ormand & Goforth by the city council. It remains, then, to determine if the surety defendants are released by the fact that the officers of the bank at Greenville did not actually pay any money or receive any money. To test this matter practically, what would have been the result if the city council of Greenville had paid the $4,000 without the notes ever having been carried to the National Bank of Greenville? I think, under the authority of *Pease* v. *Dwight,* 6 Howard's (U. S.) Reports, 190, the city council of Greenville could maintain this action. Under that decision it was held that the statute of 3 & 4 Ann, chap. 9, would be answered in the case of a note reciting in its body

that "*Walter Chester* and Pease, Chester & Co., or order," were the payees, if only Pease, Chester & Co., with which firm Walter Chester was in nowise connected, indorsed said note, and Walter Chester refused to indorse said note. The principle affirmed was that the plaintiff, Dwight, who had paid full value for the note, upon the indorsement of it over by the payees, to wit: Pease, Chester & Co., could maintain an action on it. This decision was made to answer the old requirements as to ownership of commercial paper payable to "order," which requirements were very strict in the matter of the indorsement of such paper to enable one as *indorser* to maintain his action. But now, under the changes wrought by our Code of Procedure, it is not necessary that a holder for value of such paper should have the same indorsed to him; for if he is the legal owner and holder of such note, he not only may sue, but he alone can sue, except in cases of certain trusts. It seems to me that when the indorsement in blank without recourse appeared upon these two notes by the said National Bank of Greenville, although they neither received nor paid a dollar therefor, that it did not interfere with the rights of the surety makers of the note. If the bank had discounted the paper in due course of business, it was in the power of the bank the next minute to transfer such paper to any one else. So that their indorsement in blank, without actually discounting the paper itself, enabled a third party, the city council of Greenville, to pay every dollar to the makers, Ormand & Goforth, and thereby become the lawful owners and holders of said paper. Now, I admit that the city council of Greenville could not have acquired those notes except by the payment of the $4,000, as contemplated by the makers. In other words, they could not have taken that paper and applied it to the payment of any balance due to them by Ormand & Goforth, under their contract to construct a sewerage system for the city. It seems to me that the case of *Powell* v. *Waters*, 17 Johns., 176, where A made a note payable to B, or order, which was indorsed by B, for the

purpose of being discounted at a bank for the accommodation of A, who, on being refused at the bank, negotiated it to a third person with a full knowledge of the circumstances, and the holder was allowed to recover, is fully up to the point involved in this case. I am inclined to hold that the use of the name of the cashier of the bank, as payee, and, also, the making of the note negotiable at such bank, merely put it in the power of these sureties to prevent any diversion of such notes to any other purpose than raising the $4,000. This was effected in the case of *Dogan et al.* v. *DuBois et al.*, 2 Rich. Eq., 85. It appears in that case that one DuBois was in business at Union, in this State, and desiring to raise $2,000 in cash, he applied to William Rice to indorse a note for that amount at a bank in the city of Columbia, S. C. When DuBois applied to Rice, the note already had the name of John Gist, as payee and indorser thereon. Rice paid the $2,000 in cash, and carried the note to the bank, where, upon his indorsement, the bank cashed the note for him. Before the maturity of this note, DuBois applied to Glenn and Shelton to indorse a new note, also payable at the bank, for a like sum, to renew the first note, on which John Gist and Rice appeared as indorsers. They did so, Glenn being first indorser and Shelton second indorser. This note was sent by DuBois to Rice, who was then in Columbia, with $20 in cash, directing said Rice to carry the note to the bank for discount in substitution of the first note. Before Rice could apply to the bank with this second note, Glenn became alarmed as to DuBois, and at once wrote to the bank, refusing to stand as indorser on the note and also making demand upon Rice for the note he had indorsed and in Rice's hands as aforesaid. Rice refused to deliver the note. Afterwards Rice died. It was found by a jury that John Gist's name on the note was a forgery, and Rice had to pay the first note to the bank. Therefore, Rice's executors tried to hold Glenn responsible on his note. Glenn had received a mortgage from DuBois to protect him as indorser. BuBois' general creditors attached his property

and obtained judgments for their respective debts. Glenn and the executors of Rice made this agreement, that Glenn would confess a judgment for the $2,000 note, and that the executors of Rice would satisfy the same of record at once, but Glenn was to execute the transfer of the mortgage Du-Bois had given him to such executors. This agreement was fulfilled. The general creditors of DuBois, whose claims had been reduced to judgment, claimed that such assignment of the mortgage by Glenn to the executors of Rice was null and void, as Glenn had not in fact any claims against DuBois, and, therefore, BuBois' mortgage to Glenn was a nullity. The Court held that Glenn, as an accommodation indorser on DuBois' note made payable at the bank and in the hands of Rice, as DuBois' agent for that purpose, had a perfect right to withdraw from his engagement as such accommodation indorser at any time before the note was negotiated at the bank, and also that the note was in the hands of 'Rice, purely as the agent of DuBois, to be negotiated at the bank to renew the old note, and that Rice could not divert it to any other purpose. The Court adjudged that no rights in Glenn as to' the mortgage of DuBois to him had any existence. It will be seen that in the case just considered, no consideration passed from Rice to DuBois on the second note; hence this decision does not antagonize the position I have taken in the case at bar, but this case is authority for the position that an accommodation indorser may withdraw his name from a note at any time before the note is actually negotiated. I make this observation to dispose of any question, *if it had been made (and it was not)*, that the city council had no right to withdraw their intended indorsement as accommodation makers of these notes. No actual negotiation of such notes for value had been made when the mayor and city clerk erased their names as accommodation indorsers. But no such question is raised in this case, and, therefore, this discussion is unwarranted. I cannot agree

that the Circuit Judge committed any error in his charge, as pointed out in the exceptions here presented.

The last exception relates to the matter of an increase in the amount of the judgment over the verdict rendered. This Court, in law cases, is confined to the correction of errors of law in the Court below. I see no evidence in the "Case" for appeal that any such question has been presented to or passed upon by the Circuit Judge. This seems to me, therefore, the first time any Court has had its attention called to this matter. I must decline to consider it, but without prejudice to any application to the Circuit Court for a correction in the amount of the judgment in excess of the verdict.

The foregoing presents my own views of the merits of this appeal, and I think the judgment of this Court should be: It is the judgment of this Court, that the judgment of the Circuit Court be affirmed. But the majority of the Court think otherwise, and, therefore, as the organ of the Court, I announce its judgment, that the judgment of the Circuit be reversed, but I dissent from that judgment.

MR. CHIEF JUSTICE MCIVER, *dissenting*. I dissent. It must be remembered that this appeal involves only the right of sureties, who, as is well settled, are entitled to stand upon the terms of this contract as expressed in the paper evidencing such contract. Here, by the express terms of the notes, which constitute the only evidence of the contract, which the plaintiff is seeking to enforce, the appellants bound themselves to pay to "W. E. Beattie, cashier, or order, negotiable and payable at the National Bank of Greenville, S. C.," a specified sum of money. This obligation, by its terms, rendered appellants liable to pay to said Beattie, or to any person to whom he might legally transfer such obligation, the sum of money specified therein, and did not create any liability to pay the same to any other person. When the plaintiff brought this action to enforce performance of the contract of appellants,

it must not only show that appellants executed said notes (as to which there is no dispute), but it must also show that the same have been duly transferred to the plaintiff by the payee named in said notes, or some subsequent lawful transferee thereof; and as to this, it seems to me that the plaintiff has failed to make out its case. The undisputed testimony, introduced by the plaintiff itself, shows that the plaintiff never acquired a legal title to the notes. Beattie never acquired a legal title to these notes, as he expressly refused to accept them; and if he acquired no legal title, I do not see how he could transfer any title to the plaintiff. These facts were expressly made known to the plaintiff through its treasurer, Bostick, who was the agent of plaintiff in the transaction, and notice to the agent was notice to the principal; the plaintiff cannot, therefore, claim to be an innocent holder for value *without notice*. If plaintiff had acquired these notes in the regular course of business without notice, then the result would, perhaps, be different. Of course, if Ormand & Goforth received the money specified in the note from the plaintiff, as the testimony seems to show, then they would be liable upon that ground; but not so as to appellants, who are mere sureties, and can only be held liable *on their contract as they made it*. They could not be held liable to Beattie, because he never accepted the notes, and never made any contract with them, and they cannot be held liable to any person to whom he transferred the notes without authority, who had notice of such want of authority.

MR. JUSTICE JONES concurs in the dissenting opinion of the Chief Justice.

MR. JUSTICE GARY, *dissenting*. As I do not concur in the opinion of Mr. Justice Pope, I will state briefly the grounds of my dissent. After the notes were signed by Ormand & Goforth, as principals, and R. J. Dunlap, L. R. Williams, and L. K. Armstrong, as sureties, they were indorsed by W. W. Gilreath, mayor, and T. J. Bostick, clerk

and treasurer, of the city of Greenville, by authority of the city council of Greenville. The plaintiff thus became a cosurety with the other sureties who had signed the notes. At the time the city council of Greenville indorsed the notes as aforesaid, it knew that R. J. Dunlap, L. R. Williams, and L. K. Armstrong were sureties on said notes. When Hamlin Beattie, as president, and W. E. Beattie, as cashier, of the National Bank of Greenville, indorsed the notes, in the manner set forth in the opinion of Mr. Justice Pope, the city council of Greenville was a cosurety with the other sureties. It was after the notes were indorsed by Hamlin Beattie and W. E. Beattie, as aforesaid, that the city council of Greenville erased its indorsement upon the notes. As the plaintiff was a cosurety with the other sureties, at the time it alleges in the complaint that it became the lawful owner and holder of said notes, his Honor, the presiding Judge, was in error in charging the jury: "If you believe the testimony of the plaintiff, that these notes were executed by Ormand & Goforth, as principals, and that these other defendants signed as sureties; that the note was a negotiable note—that is, a note not sealed—made payable to W. E. Beattie, as cashier, and Beattie indorsed that note, and the city council of Greenville advanced the money for the value of the note, then I charge you, as matter of law, that the city of Greenville is entitled to recover the full amount they have asked for here." Under this charge the jury had the right to render a verdict in favor of the plaintiff for the *full* amount mentioned in the notes, although they might have believed from the testimony that the plaintiff was liable as a cosurety.

Furthermore, whatever other right the plaintiff may have acquired in the notes, it did not become the lawful owner and holder thereof, by the indorsement of the officers of the National Bank of Greenville, as alleged in the complaint, for the following reasons: The notes were executed for the purpose of raising money by discount, which fact was known both to W. E. Beattie, cashier, and the plaintiff herein.

As W. E. Beattie, cashier, did not discount the notes, which was the condition upon which he was to become the lawful owner and holder thereof, he did not acquire such rights; and as the plaintiff had notice of these facts, it could not become the lawful owner and holder of the notes by the indorsement of W. E. Beattie, cashier, as alleged in the complaint. W. E. Beattie, cashier, occupied the position of the payee of a note in possession thereof without consideration, and, therefore, void. The plaintiff, with knowledge of these facts, could not, by the indorsement of W. E. Beattie, cashier, become the lawful owners and holders thereof.

I, therefore, think the judgment of the Circuit Court should be reversed, and the case remanded to that Court for a new trial.